449 So.2d 69 (1984)
STATE of Louisiana
v.
William G. HOWARD.
No. KA-1281.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
*70 Martin E. Regan, Jr., New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen. and Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty. and Joanne C. Marier, Asst. Dist. Atty., New Orleans, for the State.
Before BARRY, CIACCIO and AUGUSTINE, JJ.
CIACCIO, Judge.
Defendant, William G. Howard, was charged with possession, with intent to distribute, a controlled dangerous substance, Pentazocine, and found guilty as charged. R.S. 40:967. The defendant was sentenced *71 as a multiple offender and ordered to serve five (5) years in the Department of Corrections. R.S. 15:529.1. The defendant appeals his conviction and sentence, relying upon three assignments of error. We affirm the conviction and sentence.
The facts surrounding the defendant's arrest are conflicting:
New Orleans Police Officer Pedro Marina testified that he and fellow patrolman, Officer Wallace Goody, were patrolling the neighborhood in the vicinity of Pauger and North Villere Streets in New Orleans on June 6, 1982 at approximately 6:30 p.m. when they observed three black subjects huddled on the corner. The police officers were in plain clothes and were driving an unmarked vehicle. They stopped the car and instructed the three subjects to come to them. The defendant appeared to be very nervous. At this time the officers performed a "pat-down" of the subjects for weapons and then ran a routine computer check of their names, in order to ascertain if any of the subjects were wanted. The search and computer check proved negative and the subjects were released. According to Officer Marina, as William Howard proceeded to walk away, his partner observed, and called to his attention, a foil wrapped package which had fallen from Howard's pants leg. Upon retrieving the package, Officer Marina discovered that it contained what appeared to be the controlled drug, Pentazocine. They followed the subject and apprehended him. They placed Howard under arrest, advised him of his rights and conducted a search of his person for contraband. The search revealed an object in the defendant's groin area such that the officers directed the defendant to retrieve the object. According to the officers, the defendant appeared to be pushing the object away. Thus, Officer Marina unzipped the defendant's pants and retrieved 43 sets of Talwin and Pyribenzamine (i.e., Pentazocine). The defendant was handcuffed and placed in the back of the police car with Officer Marina. During the trip to Central Lockup, due to defendant's extreme nervousness and constant movement in the back seat of the car, a collision nearly occurred. According to the patrolmen, the defendant stated that he was not hurt in this incident.
The officers then proceeded to the defendant's girlfriend's house in order to search it for additional contraband. After the search, they transported the defendant to jail.
Officer Marina's testimony was corroborated by that of Officer Goody.
The defendant testified that on the day in question he did not possess any drugs and he first saw these drugs in the garage at police headquarters when one of the officers retrieved them from behind the back seat of the patrol car.
The defendant further testified that he was in the neighborhood looking for a friend from whom he was going to receive certain automobile parts, which were to be used on his car. He said that several men were gathered on the corner of Pauger and North Villere when a green car pulled up and two white men jumped out and ordered them to proceed to the corner. They were then ordered to take everything out of their pockets and they were thoroughly searched. The defendant stated that he was very nervous because he had been mistreated by the police on a prior occasion and he had also developed a nervous condition from his experiences in Viet Nam. The defendant testified that the police ran a computer check of their identities and they took the defendant's car keys. In response to the police inquiry as to his car's location, Howard told them it was located in front of his mother's house on Thalia Street. The defendant's girlfriend, Carolyn Anderson, approached and after Howard's release, they walked down North Villere Street towards Anderson's house. According to the defendant, as they neared Anderson's house the police approached again. They instructed Anderson to go inside the house and they told the defendant to empty his pockets. The police handcuffed the defendant and unzipped his pants but their search failed to reveal any evidence. According to Howard, he was *72 placed in the back of the patrol car and while being transported to Central lockup, the car collided with another vehicle resulting in his injury. He stated that the other vehicle was owned by someone known by these policemen and a discussion ensued after which they proceeded on their way. Howard testified that he complained of injuries but he was told by the officers to be quiet.
He said that after this incident he and the patrolmen returned to Anderson's house where the officers requested back-up assistance. After the additional patrolmen arrived, the Anderson house was searched after which the defendant was transported to Central Lockup. Howard testified that the policemen repeatedly interrogated him regarding his knowledge of other persons who might be engaged in illegal drug traffic. He stated that he could not supply this information because he did not know anyone involved in this activity.
The defendant produced two witnesses on his behalf: Luther Harvey and Carolyn Anderson.
Luther Harvey testified that he lived in the neighborhood near Pauger and North Villere Streets. He stated that on the day of this incident he was standing on the corner outside his apartment. He was approximately forty feet from the scene of this incident when he observed a police car stop and the police approach three men on the corner. He observed the police search the defendant and two additional men. He stated that he then observed the defendant and his girlfriend proceed down North Villere Street towards downtown. The police returned to their vehicle and left the scene. He stated that he never saw the police pick up anything from the street.
Carolyn Anderson, defendant's girlfriend, corroborated his story concerning the occurrences of June 6, 1982. She also testified that from the window of her house she saw the police unzip Howard's pants in order to search him. She stated, however, that nothing was retrieved from his pants.
Assignment of Error No. 1
The defendant contends that the trial court erred in refusing to allow him the opportunity for sur-rebuttal. Specifically, the defendant complains that the State was allowed to introduce into evidence a copy of the defendant's arrest register, which register indicates that the defendant responded that he was not hurt while being transported to Central Lockup. The defendant contends that he responded affirmatively to the inquiry about his injuries and that the police intentionally filled in an incorrect response in order to conceal their true motive for arresting him. According to the defendant, he was charged with an offense "in order to mitigate the damages and injuries he sustained in the motor vehicle accident which occurred while he was in police custody." Therefore, he reasons that the right of sur-rebuttal on this aspect was critical to his case.
It is a generally recognized rule of evidentiary proceeding that the prosecution has the right to rebut the evidence adduced by the defendant, however, the defendant does not have the right to rebut the prosecution's rebuttal. R.S. 15:282. Therefore, the normal order of trial shall consist of the presentation of the evidence of the State, and of the defendant and of the State in rebuttal. C.Cr.P. Art. 765(5). Hence, the introduction of any additional evidence prior to argument is solely within the discretion of the trial court. C.Cr.P. Art. 765(5). State v. Smith, 340 So.2d 247 (La., 1976). Where the State in rebuttal does not introduce any new matters other than those brought forth by the defense in its case in chief, the denial of a request for sur-rebuttal will generally not be found to be an abuse of discretion. See: State v. Kaufman, 211 La. 517, 30 So.2d 337 (1947).
In the instant case, the defense introduced a copy of the defendant's booking record which indicated that he had injured his back and neck. In rebuttal, the State introduced the arrest register which indicated that the defendant had no injuries. In refusing the defendant's request for sur-rebuttal, the court reasoned as follows:

*73 BY THE COURT:
Your objection is noted in the record, and there is no rebuttal.
The order, according to the Code of Criminal Procedure and everything that I know the order is the State on Chief, the Defense, and the State has rebuttal at its option. And, that's the rules of the game. It has got to stop somewhere. [Tr. 116]
Under the circumstances of this case, the defendant was afforded the opportunity to prove that he sustained injuries and the State was afforded the opportunity to rebut that evidence by proving he has not suffered any injuries. The normal course of trial had been followed. No new matters were raised by the State in rebuttal and the trial court did not abuse its discretion in refusing to allow sur-rebuttal. For these reasons, assignment of error No. 1 lacks merit.
Assignment No. 2
The defendant objects and assigns error to the trial court's refusal to sustain his objection to the State's reference to the defendant's arrest register in closing argument.
Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Huizar, 414 So.2d 741 (La., 1982). During trial, the closing arguments shall be confined to the evidence admitted, lack of evidence, conclusion of facts drawn by the parties and to the law applicable to the case. C.Cr.P. Art. 774. Therefore, where evidence has been properly admitted, it can become the proper subject of closing arguments. See: State v. Fowlkes, 352 So.2d 208 (La., 1977).
In this case the State properly introduced the defendant's arrest register into evidence, in rebuttal, to disprove the defendant's assertion, made in his case in main, that he had sustained injuries while in custody. The evidence, thus having been properly admitted, was a proper subject to be addressed during the State's closing argument. For this reason, assignment number 2 is without merit.
Assignment No. 3
The defendant contends that the trial court erred when it overruled his objection to an allegedly inappropriate and inflammatory remark made during the State's rebuttal closing argument.
In referring to the corner of Pauger and North Villere, where the defendant was arrested, the State made the following statement in closing argument:
... And, he [Officer Marina] told you that they make arrests in that area all of the time. They are busting people there all of the time, and he told you

* * * * * *
Closing argument shall be confined to "evidence admitted" and "... conclusions of fact," while the State's rebuttal in closing argument shall be confined to answering the defendant's argument. C.Cr.P. Art. 774.
Although it had been established by the State, during the cross-examination of the defendant, that he was in fact arrested at this very location once before for drug dealings, it had not been established that "They are busting people there all the time" nor that Officer Marina had made arrests in that area. For this reason the State's statements were outside the legal scope of closing argument and were improper.
It is, however, not every prejudicial remark which will mandate a reversal of a defendant's conviction. Rather, in order to warrant such a result, the court must be convinced that the challenged remark influenced the jury and contributed to the conviction. State v. Sharp, 418 So.2d 1344 (La., 1982).
Although there was evidence of at least one additional arrest at this location, the statements of the State were basically unsupported by the evidence and thus, were beyond the scope of closing argument. However, we are not convinced that these *74 statements so influenced the jury as to contribute to the defendant's conviction. For this reason, we find that this assignment lacks merit.
Additionally, we have reviewed this record to ascertain whether the State has proven its case. The standard for this review is whether a rational trier of fact, when viewing the evidence in the light most favorable to the prosecution could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Edwards, 400 So.2d 1370 (La., 1981).
In this case the accused was charged with possession of a scheduled narcotic, to-wit: Pentazocine, with the intent to distribute. R.S. 40:967. In such cases, the quantity of the drugs, the method by which they were packaged, and the defendant's actions create a reasonable inference that the defendant possessed the requisite intent to sell or distribute the drugs. State v. Sibley, 310 So.2d 100 (La.,1975); State v. Allen, 431 So.2d 808 (La.App. 4th Cir.1983).
In this case the evidence adduced at trial established that the defendant was in physical possession of forty-three "sets of T's and Blues". The narcotics, which were found in the defendant's underwear, were packaged in "sets", and in ten "set" packs. (as is the custom in the wholesale trade) The defendant was observed on the street corner conversing with several other persons. It is reasonable to conclude from the evidence that this defendant intended to distribute these narcotics of which he had possession.
Therefore, the totality of the evidence when viewed in the light most favorable to the prosecution satisfies this Court that any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.
Finally, we have reviewed this case for errors patent on the face of the record and our review reveals no such errors.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
BARRY, J., concurs.
BARRY, Judge, concurring.
There was no "articulable suspicion" for the police to pat-down the defendant and the other two men, i.e., simply because they were three black males together on a street corner. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and State v. Phipps, 429 So.2d 445 (La.1983). However, the search was not questioned.