ARMSTRONG, Judge.
Defendants, Clarence Griffin and Dorothy Spencer, were both charged by a bill of information with possession with intent to distribute pentazocine, a violation of La.R. S. 40:967 A. Following a trial by jury both defendants were found guilty as charged. Each was sentenced to serve seven years at hard labor, without benefit of probation, parole, or suspension of sentence. Griffin *397 now appeals raising one assignment of error.
On March 17,1987, Officers Robert Bau-dy and Eddie Selby received information from a confidential informant that drugs were being sold from a residence at 2680 Forstall Street in New Orleans. That night the officers set up a surveillance of the residence. They positioned themselves in the yard of a business which was situated directly across the street from the suspect residence. They were only fifty to sixty feet away, and Officer Selby was equipped with a pair of binoculars. At approximately 9:40 p.m. the officers observed an unknown male park his bicycle in front of the residence, walk onto the front porch, and knock on the door. The door was opened by a woman later identified as Dorothy Spencer. The officers observed the male hand paper currency to Spencer who reached inside of the residence and then transferred something to the male. He turned to leave and placed his cupped hand inside of his trouser pocket. This activity took place while Spencer stood in the open doorway. Light from inside of the residence illuminated the scene. In addition, a mercury vapor street light was located on the corner, one residence away from 2630 Forstall.
At approximately 9:50 p.m. the officers observed an automobile drive up and park across the street from the residence, directly in front of the officers. From the officers elevated vantage point they could see into the vehicle where the two male occupants were observed transferring paper currency. The driver, later identified as Eugene Wallace, exited the vehicle, walked up to the front porch of the residence, and knocked on the door. Spencer appeared, and while standing in the open doorway accepted paper currency given to her by Wallace. She stepped back inside of the residence, appeared to retrieve something, and with a cupped hand, transferred a small object to Wallace. Wallace then placed his hand into his right trouser pocket, walked back to his vehicle, and drove away. The officers followed the vehicle and stopped it a short distance away. Officer Baudy searched Wallace and recovered from his right trouser pocket a small aluminum foil packet containing one white and one yellow tablet. One tablet was pentazo-cine, a controlled dangerous substance, the other, a non-controlled substance. The two drugs are referred to as “T’s and Blues”, and are sold together as a “set.”
Wallace and his companion were arrested, and based upon their observation and seizure of the packet of drugs, the officers prepared an affidavit to secure a search warrant. The search warrant was executed by the officers at approximately 1:00 a.m. on the morning of March 18th. As they neared the residence the officers observed an unknown male being admitted into the residence. The uniformed officers waited a few moments, and as the front door was opened for the person to leave, they entered, identifying themselves as police officers armed with a search warrant. As they came in Spencer screamed and threw on the floor eight foil packets each containing one “set” of “T’s and Blues.” Griffin came from the rear of the residence and stood in a doorway pointing a loaded .38 caliber revolver at the officers. The officers ordered him to drop the weapon, which, after hesitating a few moments, he finally did.
Spencer was given a copy of the search warrant and both suspects were read their rights.[1] When asked if there were other drugs in the residence Spencer replied that there were some on a dresser in her bedroom. Recovered from her dresser were two plastic ziplock bags, each containing twenty foil packets or “sets” of “T’s and Blues”. Two handguns and $166.00 were also recovered from Spencer’s bedroom. Four handguns were recovered from Griffin’s bedroom. Hypodermic syringes and needles were also recovered from the residence. While inside the residence a woman came to the front door, and upon seeing the uniformed officers, appeared shocked. She claimed to have come to retrieve some jewelry left with Spencer. The officers no *398 ticed that the woman had needle puncture marks or “tracks” on her arms.
At trial Griffin testified that he had lived with Spencer at that address for three years. He stated that all of the illegal drugs seized from the residence belonged to him and were for his personal use. He claimed that he had been using “T’s and Blues” for the past eight or ten years and consumed twenty “sets” a day. Griffin denied selling any drugs on the night of March 17th. He also claimed that Spencer didn’t use drugs and that he had never known her to sell drugs. He further claimed that the only time Spencer went to the front door that night was when the officers came in. He said she was asleep when Wallace came to the door. He claimed to have let Wallace in the house and said the two talked about a job for a few minutes before Wallace left. He stated that he was watching television when he heard the doorbell ring, then Spencer scream. He came to the front armed with a gun because he feared foul play in the form of a burglar or thief.
Spencer testified that she didn’t use or sell drugs. She claimed that she did not sell any drugs to the unidentified male or to Eugene Wallace. She further claimed to have been asleep on the evening of March 17th from shortly after 6:00 p.m. until after 10:00 p.m. She confirmed that Griffin had lived with her for the past three years and identified the forty-eight “sets” of “T’s and Blues” as having been recovered from their residence.
A New Orleans Police Department crimi-nalist, Harry O’Neill, testified that a drug user with a very bad habit could use thirty to forty “sets” of “T’s and Blues” a day, but he characterized that as “extremely heavy, heavy” use. He stated that even if an individual had a ten year “T’s and Blues” habit, if he used four to six “sets” at a time, several times a day, he would be “in a perpetual state of stuper [sic].” During their testimony Officers Baudy and Sel-by stated that Griffin did not appear intoxicated at the time the search warrant was executed. On cross-examination Officer O’Neill admitted that the presence of needles and syringes would be consistent with a user of intravaneous drugs, but also stated that it was common for a seller of drugs to be trafficking in order to support his own drug habit. Officer O’Neill stated that the quantity and packaging of the “T’s and Blue’s” seized from Griffin and Spencer’s residence was consistent with preparation for distribution.
Based upon this evidence the jury returned verdicts of guilty as charged as to both defendants, convicting them of possession of pentazocine with intent to distribute. On appeal Griffin asserts that the evidence was insufficient to convict him of possession with intent to distribute. He contends the evidence was only sufficient to convict him of simple possession.
The State had the burden of proving beyond a reasonable doubt that Griffin (1) possessed pentazocine, and (2) while so possessing, had the specific intent to distribute it. La.R.S. 40:967 A. While under oath Griffin admitted that he possessed all of the forty-eight “sets” of “T’s and Blues” seized from his residence. In his brief on appeal Griffin reiterates his claim of possession and admits that the evidence was sufficient to convict him of possession of pentazocine. Griffin admits to having exercised dominion and control over the drugs. His admissions, together with the other evidence, are sufficient to establish constructive possession. State v. Johnson, 404 So.2d 239 (La 1981).
Specific intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to a reasonable inference of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1982); State v. Howard, 449 So.2d 69 (La.App. 4th Cir.1984); State v. Allen, 431 So.2d 808 (La.App. 4th Cir.1983). When circumstantial evidence forms the basis of proof, the facts inferred from it are assumed as true and those facts must exclude every reasonable hypothesis of guilt. La.R.S. 15:438.
This rule of circumstantial evidence, however, does not establish a separate standard of appellate review. State v. Chism, 436 So.2d 464 (La.1983). When as *399 sessing the sufficiency of the evidence to support a conviction, an appellate court must determine whether, viewing the evidence as a whole in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981).
The testimony of Officers Baudy and Sel-by supports a very strong inference that Ms. Spencer made two sales of “T’s and Blues” on the night in question. The one “set” seized from Wallace was packaged identically to the eight “sets” thrown on the floor by Spencer when the police officers appeared. The other forty “sets” were also packaged for distribution. Griffin claimed ownership of all forty-eight “sets”. Although possession of this quantity of “T’s and Blues” may have been consistent with Griffin’s claim that he was a heavy user, it was also consistent with an intent to distribute. In State v. Howard, supra, this court affirmed the conviction of a defendant for possession with intent to distribute pentazocine. He had been arrested on a street comer with forty-three “sets” of “T’s and Blues” packaged in aluminum foil packets. Although he had not been observed making a sale we found it reasonable to infer that he possessed the drugs with intent to distribute.
In light of the police officers testimony the jury could have reasonably found that Griffin lied when he testified that Spencer did not go to the door that night except when the police officers arrived with the search warrant. Having found that Griffin lied the jury could have chosen not to believe his testimony that the drags were destined only for his own personal consumption. Griffin and Spencer had lived together for three years. It would have been reasonable for the jury to conclude they were together engaged in the distribution of “T’s and Blues” and possessed the forty-eight “sets” with the intent to distribute.
All of this circumstantial evidence tends to prove that Griffin possessed pentazocine with the intent to distribute. If we assume this fact as proved the only reasonable hypothesis of innocence, that Griffin possessed the drugs solely for his own use, is excluded.
Considering the evidence as a whole in a light most favorable to the prosecution, we find that any rational trier of fact could have found proof beyond a reasonable doubt that the defendant, Clarence Griffin, possessed pentazocine with intent to distribute.
For the foregoing reasons defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The unidentified male who was preparing to leave was apparently not arrested.