544 So.2d 620 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael WHITE aka Michael Campbell, Defendant-Appellant.
No. CR88-888.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*622 John Crochet, Public Defender Office, Lake Charles, for defendant-appellant.
Annette Roach, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
LABORDE, Judge.
Defendant, Michael White aka Michael Campbell, was indicted for second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty and was tried before a twelve person jury. Defendant was found guilty and the trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant appeals, assigning eight errors by the trial court. We affirm.

FACTS
At approximately 1:00 a.m. on February 9, 1988, defendant stabbed and killed Sarah Shepard with a butcher knife or some similar instrument at her mother's home in Westlake, Louisiana in Calcasieu Parish. The two were boyfriend and girlfriend. After spending the evening together, they returned to the victim's home around midnight. While in the living room, they apparently got into an argument over the victim's decision to visit her sister in New Orleans, who was hospitalized with stab wounds. Relatives of the victim, who were in a bedroom of the house, were awakened by the argument. They heard someone digging amidst the silverware in the kitchen and then saw the victim run into their bedroom followed closely by the defendant, armed with a kitchen knife. Defendant stabbed the victim, the blade penetrating seven inches into her back, and passing through her left lung, aorta, right lung and pulmonary artery. She died of severe internal injuries shortly thereafter.
Immediately after the stabbing, defendant fled the scene, keeping the weapon he used. He remained at large until later that night when he was placed under arrest by Sgt. Norris Benoit of the Lake Charles Police Department.
Defendant assigns the following as errors by the trial court:
"1. The trial court erred in denying defendant's challenge for cause of juror, Rodney Ceasar.
2. The trial court erred in denying defendant's motion for mistrial based on the State's use of peremptory challenges to exclude blacks.
3. The trial court erred in denying the defendant's motion for mistrial based on the State's opening statement.
4. The trial court erred in allowing the State to conduct an improper closing *623 argument concerning sympathy for the victim.
5. The trial court erred in refusing defendant's proposed jury instruction concerning the burden of proof.
6. The trial court erred in instructing the jury as follows:
'If you are not convinced that the defendant is guilty of the offense charged, you may find the defendant guilty of a lesser offense....'
7. The trial court erred in denying the motion to suppress.
8. The verdict was not supported by the law and the evidence."

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in denying his challenge for cause of prospective juror, Rodney Ceasar. He argues that because of Mr. Ceasar's part-time employment as a deputy sheriff and social acquaintance with the victim's family, he was subject to a challenge for cause under La.C.Cr.P. art. 797. This article states in pertinent part:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict...."
In the instant case, the voir dire examination revealed that Mr. Ceasar had been employed by the Calcasieu Parish Sheriff's Department as a part-time deputy sheriff for fourteen years. His duties consisted mainly of handling traffic and crowd control at football games and dances. Mr. Ceasar left the Sheriff's Department three years prior to being called for jury duty in this case. Mr. Ceasar also stated on voir dire that he was somewhat acquainted with the victim's father, her uncle and some of the other members of her family. He explained that he was a resident of Mossville and probably knew everyone who lived in Westlake. Mr. Ceasar testified that he had spoken with the victim's father about her death but had not discussed any facts as to how it happened.
Following the voir dire and after the State had accepted Mr. Ceasar as a juror, defendant moved to challenge him for cause. At this point, after hearing the State's arguments opposing defendant's challenge, the court made an examination of the prospective juror to determine his ability to be fair. The examination and ruling went as follows:
"Q. Mr. Ceasar, I'm going to ask you, the fact that you do know the father of the defendant in this case, would that have any affect on you in this particular case if you're chosen to serve as a juror?
A. No, sir.
Q. The fact that you work part time as a deputy on various occasions other than as a patrolman, would it have any affect on you in this case if you're chosen to serve?
A. No, sir.
Q. I inform you that it is your duty to accept the evidence as presented and the law as I give it to you. Will you do that?
A. Yes, sir.
THE COURT: The challenge for cause will be denied."
Following the trial court's denial of the challenge for cause, defendant exercised a peremptory challenge to excuse Mr. Ceasar. Defendant then exhausted all of his peremptory challenges before the jury was selected. Thus, having exhausted all of his peremptory challenges before completion of the jury panel, defendant on appeal is *624 entitled to complain of a ruling refusing to maintain a challenge for cause made by him. State v. Monroe, 366 So.2d 1345 (La. 1978).
Our Supreme Court has held that service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause. However, a prospective juror is not automatically disqualified by such association. State v. Comeaux, 514 So.2d 84 (La.1987). Rather, it must be shown that the prospective juror's employment relationship would have an adverse bearing upon his ability to act as a fair and impartial juror. State v. Smith, 466 So.2d 1343 (La.App. 3d Cir.1985).
Similarly, our Supreme Court has held that a juror's acquaintance with someone involved in the case does not in itself disqualify the juror from service. The defendant must show that the juror's acquaintance with the victim makes it reasonable to conclude that the juror would be influenced by the relation in making his decision as to guilt or innocence. State v. McIntyre, 381 So.2d 408 (La.1980). The trial judge is vested with wide discretion in appraising the impartiality of prospective jurors, and his ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion. State v. Comeaux, supra.
In the instant case, Mr. Ceasar had ceased working as a part-time deputy three years before the trial. His duties as a deputy were only tangentially involved with actual law enforcement. He was only casually acquainted with the victim's family. Mr. Ceasar made it clear that neither of these factors would prevent him from treating the defendant fairly and impartially. Thus, the trial court did not abuse its discretion in denying defendant's challenge for cause, and this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in denying his motion for mistrial based on the State's use of peremptory challenges to exclude blacks.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court articulated the evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the State's exercise of peremptory challenges against members of his race. Additionally, La.C. Cr.P. art. 795 specifies that a peremptory challenge by the State shall not be based solely on the race of the juror.
A defendant can establish a prima facie case of purposeful discrimination on evidence adduced solely from the State's exercise of peremptory challenges at his trial. To establish a prima facie case, defendant must show that he is a member of a cognizable racial group, and that the State has exercised peremptory challenges to remove from the venir members of the defendant's race. In addition, all relevant circumstances may be considered to determine whether the defendant has made the required showing. Once the defendant makes this showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. A prosecutor may not rebut the defendant's prima facie case of discrimination merely by stating that he assumed a potential juror would be partial to the defendant because of their shared race. However, the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. Finally, the defendant has the ultimate burden of persuasion. Batson v. Kentucky, supra; State v. Thompson, 516 So.2d 349 (La.1987).
In the instant case, defendant moved for a mistrial based on the systematic exclusion of blacks from the jury by the State's use of peremptory challenges. Defendant is black, and the State exercised three peremptory challenges against blacks.[1] However, it articulated specific *625 non-racial reasons for each of the black jurors challenged. After hearing statements on this issue from both sides, and considering the circumstances surrounding the jury selection, the trial court concluded that no purposeful discrimination violative of Batson v. Kentucky, and La.C.Cr.P. art. 795 had occurred. In expressing its decision the trial court stated:
"The Court has heard all of the questioning and I have made the observation that in this particular instance the defendant is black and that we have ended up with an all white jury; however, I do not find that there was any kind of systematic exclusion in this particular case, especially in view of the fact that there were two blacks that were able to serve in this instance and it was the defense who chose not to select those blacks. All of the causes I think were valid in this particular instance and it appears to the Court that just because we do not select a particular juror, white or black, I think that we have that right under our law to exclude or to challenge anyone for any reason so long as it is not based upon race alone and I don't feel in this particular instance, after hearing the questioning and the responses by all of the jurors, that any of the peremptory challenges were exercised due to race."
In the instant case, we conclude that the State did not exercise its peremptory challenges with a discriminatory purpose. Accordingly, the trial court did not err in denying defendant's motion for a mistrial based on the State's exercise of its peremptory challenge against blacks.
Thus, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant contends that the trial court erred in denying his motion for a mistrial based on the State's opening statement.
Article 766 of the Louisiana Code of Criminal Procedure provides:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
The rule generally is that absent prosecutorial bad faith or clear and substantial prejudice to the defendant, a reference during the opening statement not subsequently admitted at trial is not a ground for a mistrial. State v. Green, 343 So.2d 149 (La. 1977). Also, an inadvertent misstatement by the prosecutor in his opening statement does not require a mistrial. State v. Foster, 437 So.2d 309 (La.App. 2d Cir.1983).
In the instant case, on the morning that the testimony was to commence, defendant elected not to appear in the courtroom. The State objected to defense counsel's attempt to waive defendant's presence. Citing the problem of identification created by defendant's absence, the prosecutor suggested a stipulation relative to the State's witnesses' identification of defendant. However, no agreement on the exact language of the stipulation was reached between the State and defense counsel. The trial court decided that when the issue of defendant's identity came up in the course of the trial, it would at that time consider having the defendant brought to the courtroom by whatever means necessary.
In the course of his opening statement, the prosecutor erroneously stated that a stipulation concerning identification of the defendant had been agreed on. At the conclusion of this statement, the defense moved for a mistrial because of the prejudicial impact of the prosecutor's statement.[2] The trial court, determined that the comments about the stipulation were not so prejudicial as to prevent a fair trial and denied defendant's motion. We agree. The record does not suggest any bad faith on the part of the prosecutor. His opening statement set forth the nature of the evidence by which the State expected to prove *626 defendant committed the crime for which he was charged. The trial judge adequately advised the jury that the opening statements and closing arguments made by the attorneys were not evidence. Furthermore, in light of the overwhelming evidence in the record substantiating the defendant's identity as the perpetrator of the crime, it is evident that the prosecutor's inadvertent comments regarding the stipulation did not influence the jury or contribute to the verdict.
For these reasons this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial court erred in refusing to sustain his objection to the State's closing argument. He argues that the prosecutor attempted to improperly invoke sympathy for the victim in violation of La.C.Cr. art. 774.[3] Specifically, he refers to the following statement made in reference to a photograph of the victim taken while she was alive. "Look at her. I introduced two pictures because I knew you were going to see some rough and horrible pictures of her later and I wanted you to see what she was like before he did this to her. Look at her. She was twenty-one. She's dressed up. She's happy. Another picture where she looks like she might be in a rather shrivelled state."
In this case, the State properly admitted the photo of the defendant into evidence. Thus, having been properly admitted, this evidence was a proper subject to be addressed during the State's closing argument. State v. Howard, 449 So.2d 69 (La. App. 4th Cir.1984). Furthermore, it is well-settled that before a verdict will be overturned on the basis of improper argument, the reviewing court must be convinced that the challenged remark influenced the jury and contributed to the conviction. State v. Howard, supra. In the instant case, given the overwhelming evidence in support of defendant's guilt, we do not find that the prosecutor's remarks were so inflammatory as to render the jury incapable of making an independent determination of defendant's guilt.
For the reasons above, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 5 AND 6
By these assignments of error, defendant contends that the trial court erred in refusing defendant's proposed jury instructions concerning the burden of proof and in instructing the jury that "[i]f you are not convinced that the defendant is guilty of the offense charged, you may find the defendant guilty of a lessor offense...."
Pursuant to La.C.Cr.P. art. 807, the State and the defendant have a right, before arguments begin, to submit special written charges for the jury to the court. Moreover, the article specifies that the court shall give a requested special charge if it is wholly correct and pertinent and does not require qualification, limitation or explanation. Also, such charge need not be given if it is included in either the general charge or in another special charge to be given.
In the instant case, defendant requested the following special charge.
"The burden of proof is on the state to prove beyond a reasonable doubt that the homicide alleged herein is second degree murder rather than manslaughter. In other words, in order to convict defendant of second degree murder you must find beyond a reasonable doubt that the offense was not committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection, or you must find beyond a reasonable doubt that the offender's blood had actually cooled, or that an average person's blood would have cooled at the time the offense was committed." *627 The trial court denied defendant's request and defendant objected to the court's ruling.
Defendant contends that the trial court's refusal to give the requested charge constitutes reversible error. He argues that the Louisiana statutes on second degree murder and manslaughter operate in such a fashion as to deprive him of his constitutional right to due process of law. According to the defendant, the State should be required to prove beyond a reasonable doubt, in a second degree murder prosecution, that the defendant did not act in sudden passion or heat of blood.[4] This argument has been previously rejected by our courts. In State v. Chelette, 453 So.2d 1282, 1286 (La.App. 3rd Cir.), writ denied, 458 So.2d 127 (1984), this court stated:
"In light of the U.S. Supreme Court's rationale in Patterson v. New York, [432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)], the Louisiana statutory scheme does not violate the Due Process Clause. In [State v. Peterson, 290 So.2d 307 (La. 1974)], our Supreme Court noted that `passion' was a mitigating factor which acted as a defense, which is not unlike the statutory scheme employed in New York that was held constitutional in Patterson. Unlike the situation in Mullaney v. Wilbur concerning the Maine homicide laws, the Louisiana statute, as interpreted in Peterson, does not place any burden on the defendant to disprove an essential element of the crime charged."
As our Supreme Court stated in State v. Lombard, 486 So.2d 106 (La.1986), since "sudden passion" and "heat of blood" are not elements of the crime, the State does not have the burden of proving them. Nor does our law require that these factors be affirmatively established by the defendant. Instead, the jury is free to infer these mitigating factors from the evidence. Id. at 111, n. 9. Consequently, this argument propounded by defendant does not have merit.
Our review of the jury instructions given by the trial court in the instant case indicates that the instructions were appropriate, sufficient and accurate in light of the statutory scheme under which defendant was charged.
Therefore, both assignments of error nos. 5 and 6 have no merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends that the trial court erred in denying the motion to suppress statements defendant made to Detective Gary Guillory of the Westlake Police Department at the Calcasieu Parish Jail. Defendant argues that Detective Guillory and the Westlake Police Department did not scrupulously honor defendant's right to remain silent and to not submit to interrogation.
The Louisiana Constitution has incorporated and enhanced the protection afforded an accused under the Fifth Amendment to the United States Constitution and as announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hence, an accused must be fully advised of the reason for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to assistance of counsel, and if indigent, his right to court appointed counsel. LSA-Const. Art. 1, Sec. 13; State v. Rodrigue, 409 So.2d 556 (La. 1982).
In the instant case, the record reflects that defendant was advised of his constitutional rights under Miranda on at *628 least three different occasions by three different officers. Sgt. Norris Benoit so advised defendant when he was initially taken into custody. So did Officer Robert Cain, who along with Chief Jim Herford, transported defendant from the Lake Charles Police Department to the Westlake Police Department, as did Detective Guillory, who was assigned to investigate the crime prior to questioning defendant at the jail. The record reveals that Officer Cain and Chief Herford immediately ceased questioning the defendant when defendant invoked his privilege against self-incrimination. Thus, defendant was aware that he could choose silence over speech prior to making the statements to Detective Guillory.
Moreover, the record does not reflect defendant's contention that Detective Guillory was fully advised that defendant had invoked his right to silence. Rather, the evidence reveals that Detective Guillory was informed that the defendant had made some verbal statements but had not made a written statement. Detective Guillory then proceeded to conduct his investigation in an apparently routine manner, including advising the defendant of his rights. It was the defendant who, after being advised of his rights, actually initiated the conversation by asking how the victim died.
The exercise of the right to cut off questioning by an accused does not act as a complete bar to all further police questioning. However, the police must "scrupulously honor" a defendant's right to cut off questioning. Furthermore, when an accused initiates communication on the subject with police after earlier invoking his right to silence, the police may permissibly resume the interrogation. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); State v. Loyd, 425 So. 2d 710 (La.1982); State v. Phillips, 444 So.2d 1196 (La.1984). We conclude that the officers in the instant case did scrupulously honor defendant's right. Officers Cain and Herford immediately ceased questioning defendant when he invoked his right to silence. Detective Guillory also terminated his interview of defendant as soon as the defendant stated that he did not want to answer any more questions. Finally, the record reflects that defendant's statements were given freely and voluntarily.
Thus, assignment of error no. 7 lacks merit.

ASSIGNMENT OF ERROR NO 8
Defendant contends that the trial court erred in that the verdict was not supported by the law and the evidence.
The constitutional standard for testing the sufficiency of evidence in order to sustain a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Honeycutt, 438 So.2d 1303 (La.App. 3d Cir.), writ denied, 443 So.2d 585 (La.1983). Ultimately all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Porretto, 468 So.2d 1142 (La.1985).
In the instant case, the State presented overwhelming evidence that the defendant did commit the crime for which he was charged and convicted, second degree murder in violation of La.R.S. 14:30.1.[5] The State produced ten witnesses at defendant's trial, three of whom were at the scene when the crime occurred. Troy Shepard, a nine-year-old niece of the victim, was an eye witness to the stabbing. She testified that she heard the defendant and the victim talking while the two were in an another room and she was in a bedroom. She saw the victim run into the bedroom *629 and jump into the bed, followed by the defendant who held a kitchen knife in his hand. She stated that the defendant kept calling the victim to come to him. As the victim attempted to get away from the defendant, he stabbed her in the back and fled the scene. Another niece, eleven-year-old Shawn Shepard, testified to substantially the same facts as Troy. In addition, she testified that the defendant put the knife to her throat and threatened to stab her if she moved to get help. The testimony of these witnesses was corroborated by another witness to the stabbing, Vanessa Shepard, the victim's sister. Moreover, the investigating police officers testified concerning the voluntary inculpatory statements defendant made admitting that he was the perpetrator of the crime against the victim. Also the coroner, Dr. Terry Welke, testified that the seven inch deep knife wound caused the victim's death. There was no evidence presented by the defense.
Thus, the record contains overwhelming evidence supporting defendant's conviction for second degree murder. Nothing in the record indicates that there was sufficient provocation to deprive an average person of his self-control and cool reflection. Clearly, the State met its burden of proving each and every element of this offense.
For the above reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] There is a dispute as to whether a fourth juror peremptorily challenged by the state was, in fact, black. However, defendant concedes that this juror was not improperly challenged on racial grounds.
[2] La.C.Cr.P. art. 775 provides in pertinent part:

"Upon motion of a defendant a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial...."
[3] La.C.Cr.P. art. 774 provides in pertinent part:

"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice."
[4] La.R.S. 14:30.1 defines second degree murder as follows:

"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm...."
La.R.S. 14:31(1) defines manslaughter as:
"(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed...."
[5] In order to establish that defendant was guilty of second degree murder, the state had to prove that the defendant killed the victim and that he had the specific intent to kill or inflict great bodily harm. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1).