KNOLL, Judge.
Defendant, Robert Wayne Fisher, appeals his jury conviction for second-degree murder, a violation of LSA-R.S. 14:30.1. The murder victim was defendant’s wife, Tamara. The defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction, relying on five assignments of error.
FACTS
Since defendant raises an assignment of error involving an extensive review of the facts, we will only briefly sketch the facts at this point.
During the evening of August 27, 1987, defendant and his wife, Tamara, came into their home after spending time around their backyard pool and retired to the kitchen area. Defendant sat at a table in the kitchen, and Tamara sat on a bar stool at a counter which separated the kitchen from the dining area. Tamara’s two children from a previous marriage, a son eleven years of age and a daughter six years of age, had earlier been sent to bed for the night; although they had separate rooms, the children were both sleeping in the boy’s room located not too far away from the kitchen area.
Tamara’s son testified that he heard a disagreement between his mother and defendant about some photographs. Then he heard three gunshots and saw defendant walking down the hall, carrying a gun at his side. Defendant testified that Tamara told him, “You’re going to pay for this, you son-of-a-biteh, I’m gonna get you.” In response to Tamara’s statement, defendant stated that he rolled his chair to the china cabinet, about four feet away, grabbed a nine millimeter Luger located there, released the safety, and shot his wife twice in the chest and once in the abdomen.
Following the homicide, defendant placed numerous firearms in his automobile and then brought his wife’s two children to their *550 maternal grandmother. Afterwards, defendant drove to the Lake Charles Police Department and told Detective Eric Claudel, “Don’t be alarmed. I just shot my wife.”
DENIAL OF DEFENDANT’S MOTION TO SUPPRESS
Defendant contends that the trial court erred when it failed to suppress inculpatory statements he made to police officers after the shooting and that the results of a physical search of his house and automobile should have been suppressed. He argues that notwithstanding his invocation of his right to counsel, the police officers engaged him in conversation which caused him to make statements against his interest.
In State v. Ross, 572 So.2d 238, 240 (La.App. 1st Cir.1990), the First Circuit stated:
“The statements of an accused, whether exculpatory or inculpatory, when made during a custodial interrogation, should be suppressed unless the accused is first advised of, and subsequently waives, his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), U.S. Const. Amend. V, VI, La. Const, art. I, Section 13. When an accused asserts his right to counsel, the police must scrupulously honor the invocation of the right and interrogation must cease. State v. Harper, 430 So.2d 627, 633 (La.1983); State v. Campbell, 461 So.2d 644, 648 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1299 (La.1985).
An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); State v. Arceneaux, 425 So.2d 740, 744 (La.1983); State v. Campbell, 461 So.2d at 648. Furthermore, even when the accused initiates further communication, exchanges, or conversation with the police, and reinterrogation follows, the prosecution still has the burden of showing that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation. Oregon v. Bradshaw, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983); State v. Carr, 530 So.2d 579, 587 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988), cert. denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).”
After bringing the victim’s two children to their maternal grandmother, defendant drove to the Lake Charles Police Department and requested to speak to a detective. In response to defendant’s request, he was sent to the desk of Detective Eric Claudel. Detective Claudel testified that, without initiating any questions, defendant stated that he had just killed his wife. The detective and two other officers then searched defendant for weapons and read him a statement of his constitutional rights. Defendant signed an acknowledgement that he was read his rights, but chose not to sign a waiver of his rights.
The record shows that the city police did not interrogate defendant. Nevertheless, the police officers stated that defendant voluntarily told them that his original intent was to engage the police in a gun fight, hoping not to survive and thus obviating imprisonment.
Since the crime to which defendant confessed did not occur within the jurisdiction of the city police, the Calcasieu Parish Sheriffs Office was contacted and defendant was voluntarily transported to the crime scene. Calcasieu Parish Deputy Sidney Rosteet testified that he re-advised defendant of his constitutional rights at the crime scene. In recognition of this defendant signed a form stating that he understood his rights, but that he chose not to make a statement until an attorney was present. Deputy Rosteet’s testimony was that he did not interrogate defendant while they were together at the crime scene. Even though there was no interrogation, several parish officers and Detective Claudel testified that defendant again repeated that his original plans were to have had a gun fight with the police.
Deputy Lucky DeLouche testified that at the crime scene he sought defendant’s per *551 mission to search the house and defendant’s automobile. Defendant told him that he understood his constitutional rights, that he was willing to cooperate, but that he did not want to sign any waiver forms. Later, as Deputy DeLouche prepared the arrest report, defendant voluntarily gave him two rounds of ammunition which he had in his pocket.
Deputy Keith Skeen stated that he guarded defendant at the crime scene. He corroborated the other officer’s testimony regarding defendant’s voluntary statements about the crime and his intentions to engage the officers in a gun fight afterwards. He further stated that none of the police officers interrogated defendant at the crime scene.
After processing the crime scene, Deputy Rosteet retened defendant by automobile to the city police station. En route, Deputy Rosteet told the defendant that he knew the victim and her mother. Defendant responded by telling him that he was sorry that the deputy knew the victim; he also stated that he and the victim were trying a reconciliation after a physical separation; and that the last straw was the victim’s statement to him that she was going to get part of his Halliburton retirement fund. Deputy Rosteet admitted that his conversation with defendant was casual, and that the only question he posed was his inquiry about the identity of the victim’s attorney during their matrimonial discord.
When the State attempts to introduce an inculpatory statement into evidence, it has the burden of proving that the statement was made freely and voluntarily. A trial judge’s determination of the voluntariness of an inculpatory statement is entitled to great weight and will not be disturbed on appellate review unless it is clearly not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983).
Likewise, a search conducted pursuant to a valid consent is an exception to the warrant and probable cause requirements of the law. State v. Zone, 511 So.2d 96 (La.App. 3rd Cir.1987), writ denied, 513 So.2d 822 (La.1987). A consent to search is valid when it is freely and voluntarily given by a person who has common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Cody, 446 So.2d 1278 (La.App. 2nd Cir.1984).
Moreover, Louisiana jurisprudence is well established that spontaneous and voluntary statements, not given in interrogation or under compelling influence, are admissible into evidence without Miranda warnings, even if defendant is in custody. State v. Robinson, 384 So.2d 332 (La.1980).
In the case sub judice, we find that defendant voluntarily confessed to the homicide, and was read his constitutional rights immediately afterwards; despite defendant’s acknowledgment of his understanding of his constitutional rights, he volunteered further incriminating statements, and agreed to return to the scene of the crime. At the scene of the crime, defendant was further read his constitutional rights and nevertheless repeated several incriminating statements.
With regard to Deputy Rosteet’s initiation of conversation with defendant after leaving the crime scene, we do not find that this violated defendant’s request to make no further statements until he consulted with an attorney. The deputy’s comment was a generalized statement of his familiarity with the victim and her mother and did not rise to the level of interrogation or compelling influence. Compare, Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).
Furthermore, we note that even if the trial court improperly denied defendant’s motion to suppress, the error was harmless. At the trial, defendant testified in his own defense. During his testimony he admitted killing his wife and further repeated that he intended to engage the police officers in a gun fight so that he would not be jailed.
After carefully reviewing the jurisprudence and the evidence presented, we find that defendant’s assignment of error lacks merit.
SPECIAL JURY INSTRUCTION
Defendant contends that the trial court erred in not giving a special jury instruction. He argues that his special instruction was required because due process requires that in order to convict him of second- *552 degree murder the State has the burden of proving beyond a reasonable doubt that the crime was committed in the absence of heat of passion.
Without elaboration, we find that the ease of State v. White, 544 So.2d 620 (La.App. 3rd Cir.1989), writ denied, 550 So.2d 648 (La.1989), is dispositive of this assignment of error. In State v. White, we examined the same jury instruction defendant proposed in the case sub judice and held at page 627:
“[S]inee ‘sudden passion’ and ‘heat of blood’ are not elements of the crime, the State does not have the burden of proving them. Nor does our law require that these factors be affirmatively established by the defendant. Instead, the jury is free to infer these mitigating factors from the evidence. Consequently, this argument propounded by defendant does not have merit.”
Therefore, for the reasons expressed in State v. White, we find that this assignment of error is without merit.
SUFFICIENCY OF THE EVIDENCE
Defendant contends that the evidence was legally insufficient to convict him of second-degree murder. He presents two arguments in support of his contention: (1) whether the State proved the elements of second-degree murder beyond a reasonable doubt; and (2) whether the jury erred in failing to find sufficient provocation to reduce his crime to manslaughter.
When the issue of sufficiency of evidence is raised on appellate review, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Richardson, 425 So.2d 1228 (La.1983).
Second-degree murder is the killing of a human being where the offender has specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10. Specific criminal intent may be inferred from the circumstances present in the case and the actions of the defendant. State v. Broussard, 560 So.2d 694 (La.App. 3rd Cir.1990), writ denied, 566 So.2d 981 (La.1990). Aiming a firearm directly at a victim is indicative of intent to kill or inflict great bodily harm. State v. Maxey, 527 So.2d 551 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 868 (La.1989).
Manslaughter is the killing of a human being under certain mitigating circumstances (heat of blood or sudden passion) which prevent the crime from being second-degree murder. State v. Batiste, 410 So.2d 1055 (La.1982). Once the jury finds the elements of second-degree murder then it has to determine whether the circumstances indicate that the crime was actually manslaughter. State v. Maddox, 522 So.2d 579 (La.App. 1st Cir.1988).
The victim’s minor son testified that he could hear the defendant and the victim having a disagreement in the kitchen area concerning some pictures. He stated that although he could hear defendant’s voice, he could not understand what the defendant was saying. When he heard the three gunshots, he ran down the hall to see what happened. He saw defendant walking to his room carrying a gun. When he went up to the victim, he said she was sitting on a bar stool, gasping for air.
Defendant testified in his own defense. At trial he told the jury that just prior to the shooting, the victim told him, ‘You’re going to pay for this, you son-of-a-bitch, I’m gonna get you.” Shortly afterwards, he stated that he rolled his chair approximately four feet to the china cabinet where a gun was located; he grabbed the gun, a nine millimeter Luger, released the safety, and shot the victim three *553 times. At the time of the shooting, defendant was between ten and twelve feet away from the victim.
Dr. Stanley Smith, a pathologist, testified that he performed the autopsy on the victim. He found that the victim was shot three times: once through the abdomen and twice through the chest. Dr. Smith further testified that the victim died as a result of shock due to blood loss and failure to the mechanical functioning of the heart.
Viewing the evidence under the Jackson standard, we conclude that a rational trier of fact could have found the essential elements of the crime of second-degree murder beyond a reasonable doubt.
Moreover, we do not find that the record supports a reduction of defendant’s conviction to manslaughter. The victim’s son testified that defendant did not raise his voice to the victim during the disagreement. In line with this testimony, defendant testified that during the dispute he kept his tone of voice down because he was trying not to argue with the victim because of the marital problems they had in the past. He further stated that he did not shout and did not lose his temper. Furthermore, the record is void of any evidence that the victim physically attacked defendant or that her verbal assault was any worse than that reported by defendant. Considering these factors and the number of times defendant shot the victim, we conclude that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the mitigating factors were not established which would have allowed the jury find defendant guilty of manslaughter rather than second-degree murder.
For these reasons, we find no merit to defendant’s assignment of error.
TRIAL COURT’S FAILURE TO ADMONISH JURY
Defendant next contends that the trial court erred when it failed to admonish the jury to disregard a portion of the testimony of the victim’s son as being non-responsive during cross-examination.
The particular colloquy relevant to this discussion reads as follows:
[Under cross examination by defense counsel.]
Q. But you weren’t watching your mother. Why was that?
A. Because when he [defendant] gets drunk, he gets rowdy.
Q. Okay. And your mother gets rowdy too, doesn’t she?
A. She doesn’t swing her arms and beat the heck out of people.
[Defense counsel:] I’m going to object to that, Your Honor, and I ask that it be stricken from the record and that the jury be ordered to disregard it. It was not a responsive answer.
THE COURT: Objection’s overruled. Let’s proceed.”
Defendant argues that the statement of the victim’s son could have been interpreted by the jury as a reference to past batteries committed by defendant, and that unduly prejudiced the jury against defendant. We disagree.
In State v. Michel, 422 So.2d 1115 (La.1982), the Louisiana Supreme Court held that unresponsive and unsolicited testimony is not chargeable against the State to provide a ground to reverse a criminal conviction; although, it is within the trial court’s discretion to grant a mistrial if it believes that an admonition is insufficient to assure that defendant receives a fair trial.
In the case sub judice, defendant did not move for a mistrial and the trial court chose not even to admonish the jury to disregard the statement. In such an instance, assuming that an admonition was required, we, as a reviewing court, will not regard this as reversible error unless we can find that the trial court’s ruling was so egregious that it affects substantial rights of the accused. LSA-C.Cr.P. Art. 921.
After carefully reviewing the witness’s statement in light of his thirty-eight pages of testimony, we do not find that the trial court’s failure to admonish affects substantial rights of the accused. When viewed as a whole, the record shows that defendant retained his composure prior to the shooting *554 and that there was no testimony that the victim was physically struck by defendant at any time during the evening. Moreover, defendant’s own testimony that he shot the victim establishes that if this failed admonition was erroneous, it certainly constituted an error which did not affect substantial rights of defendant.
For these reasons, defendant’s assignment of error is without merit.
EVIDENTIARY RULING
Lastly, defendant contends that the trial court erred when it allowed Deputy Claudel to testify about $8,500 found on defendant at the time of his arrest. He argues that the jury could have inferred from this evidence that the defendant had planned the homicide.
Defendant objected when Deputy Claudel testified about the money he found on defendant at the time of arrest. After considering the objection, the trial court ruled that the State was prohibited from admitting into evidence the receipt which showed the amount found on defendant because the State failed to provide this document to defendant during discovery. Nevertheless, the trial court allowed Deputy Claudel to verbally testify about the money which was found on defendant at his arrest.
LSA-C.Cr.P. Art. 729.5 gives the trial court wide latitude in choosing the appropriate sanction should either party fail to comply with requests for discovery. Assuming for the sake of argument that the trial court erroneously allowed the deputy to testify about the amount found on defendant, we must find that prejudice resulted from the admission of this testimony before we find reversible error. State v. Busby, 464 So.2d 262 (La.1985), cert. denied, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165, rehearing denied, 474 U.S. 1015, 106 S.Ct. 550, 88 L.Ed.2d 478.
After carefully reviewing the alleged impact that this evidence may have had on the jury, in light of defendant’s direct testimony to the jury that he killed his wife, we find no prejudice resulted in the inclusion of this additional evidence.
For these reasons, this assignment of error is without merit.
ERRORS PATENT
Our review of the record reveals two errors patent which must be addressed. Neither of the errors constitutes reversible error.
First, LSA-C.Cr.P. Art. 880 requires the trial court to give defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. After carefully reviewing the minutes and transcript in the case sub judice, we find that defendant was not given credit for time served. Accordingly, we remand this ease for the trial court to amend the minute entry to give defendant credit for time served.
Second, LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform defendant of the prescriptive period for post-conviction relief. The record shows that the trial court did not inform defendant of this prescriptive period. Since this defect does no bear on the excessiveness of sentence and thus is not grounds to reverse the sentence, we need not remand the case for resentencing. Instead, we direct the trial court to inform the defendant of the provisions of Art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of this case.
DECREE
For the foregoing reasons, defendant’s conviction and sentence are affirmed. However, the case is remanded and the trial court is ordered to amend the minute entry of the sentencing to reflect defendant’s credit for time served. Furthermore, the trial court is ordered to notify defendant of the prescriptive period of Art. 930.8 by sending written notice to.him within ten days of the rendition of this opinion.
AFFIRMED AND REMANDED.