453 So.2d 1282 (1984)
STATE of Louisiana
v.
Dowen P. CHELETTE, Defendant-Appellant.
No. CR83-932.
Court of Appeal of Louisiana, Third Circuit.
August 10, 1984.
Writ Denied October 12, 1984.
*1283 Thomas K. Brocato, J. Michael Small, Small, Small, Williamson & Brocato, Alexandria, for defendant-appellant.
Edward E. Roberts, Jr., G. Earl Humphries, III, Asst. Dist. Attys., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOMENGEAUX, Judge.
The defendant, Dowen P. Chelette, was indicted for the second degree murder of Phyllis Thompson, a violation of La.R.S. 14:30.1. On August 3, 1983, a twelve member jury found the defendant guilty as charged by a vote of 11 to 1. On August 12, 1983, motions for a new trial and in arrest of judgment were denied. The defendant waived legal delays and was sentenced to serve life imprisonment without the benefit of probation, parole, or suspension of sentence. Defendant appealed urging two assignments of error.[1]

FACTS
On March 4, 1983, Dowen P. Chelette, the defendant, traveled from Colfax, La., to Pineville, La., to visit Phyllis Thompson. Ms. Thompson and Mr. Chelette had been dating for over two years and planned to be married. Mr. Chelette stated at trial that he intended to give Ms. Thompson a list of debts that she owed him. According to Chelette's testimony Ms. Thompson intended to file for bankruptcy and consequently wanted to know how much she owed him.
Ms. Thompson, accompanied by two of her children, Johnny and Tina Shoemaker, and a friend, Melanie Dryden, met with the defendant at a washateria in Pineville. Ms. Thompson and Mr. Chelette became embroiled in an argument which apparently centered around the debt. Planning to leave the washateria, Ms. Thompson, along with her children and friend, got into her automobile to go home. Mr. Chelette, against the wishes of Ms. Thompson, also got into the car, and sat in the back seat with her son. The argument continued as Ms. Thompson drove towards her residence. Facts gathered from the record indicate that Mr. Chelette asked Ms. Thompson a question and she simply ignored him.
The testimony rendered concerning the defendant's next actions is slightly contradictory; however, it appears that Mr. Chelette *1284 pulled a .22 caliber pistol out of his waistband and the weapon fired, striking Ms. Thompson in the head. Ms. Thompson slumped over and Ms. Dryden and Chelette proceeded to stop the moving vehicle. Ms. Thompson died the following day from the gunshot wound.
Mr. Chelette testified that he had placed the weapon in his waistband as protection when he had stopped earlier to use the telephone in a dimly lighted area. He testified that he simply forgot to take the pistol out of his waistband upon reaching the washateria. He further testified that the placement of the weapon was uncomfortable so he took it out of his waistband and that while arguing with Ms. Thompson he banged the weapon against the top of the front seat. His testimony was to the effect that this action accidently caused the weapon to fire, striking Ms. Thompson.
Johnny Shoemaker testified that Mr. Chelette simply pulled the weapon from his person and shot Ms. Thompson. His testimony did not support Mr. Chelette's position that the weapon had accidently misfired.

ASSIGNMENTS OF ERROR
By his assignments of error the appellant contends that the trial court was in error in denying his post-verdict motion in arrest of judgment and his motion for acquittal and/or a new trial. It is the defendant's contention that his motion should have been granted because the statutory provisions of Louisiana regarding the laws of second degree murder and manslaughter operate in such a fashion as to unconstitutionally deprive him of due process of law. See La.C.Cr.P. Art. 859(2); State v. Peterman, 121 La. 620, 46 So. 672 (1908). Defendant argues that the laws operate in such a fashion as to relieve the State of its burden of proof. His argument is that the State does not have to prove beyond a reasonable doubt, in a second degree murder prosecution, that the defendant did not act in sudden passion or heat of blood. Secondly, defendant argues that the State has legislatively and jurisprudentially failed to give adequate guidelines regarding the allocation of the burden of proof on the issue of sudden passion or heat of blood as an element of a manslaughter conviction.
Defendant maintains that the above mentioned ambiguities in the law act to deprive him of due process in two ways. First, he claims that the jury instructions used to define the elements of second degree murder and manslaughter can only confuse a jury, which confusion defendant asserts will be resolved in favor of the State. Secondly, he contends that because of the absence of guidelines regarding the degree of proof necessary to carry the burden on the action in sudden passion or heat of blood, a reviewing Court cannot adequately test the proof adduced at trial.
Defendant cites In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) as the underlying authority for the contention that the Louisiana statutory scheme concerning second degree murder and manslaughter is unconstitutional. The United States Supreme Court stated in In Re Winship at 364, 90 S.Ct. at 1072:
"[w]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."
In the case of Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the U.S. Supreme Court was faced with the issue of determining the constitutionality of the Maine homicide laws in light of its pronouncement in In Re Winship.
The Maine statutory scheme was interpreted as follows:
"The Maine law of homicide, as it bears on this case, can be stated succinctly: Absent justification or excuse, all intentional or criminally reckless killings are felonious homicides. Felonious homicide is punished as murderi.e., by life imprisonmentunless the defendant proves by a fair preponderance of the evidence that it was committed in the *1285 heat of passion on sudden provocation, in which case it is punished as manslaughteri.e., by a fine not to exceed $1,000 or by imprisonment not to exceed 20 years. The issue is whether the Maine rule requiring the defendant to prove that he acted in the heat of passion on sudden provocation accords with due process."
The Court found the statutory scheme offended the defendant's due process rights; it stated:
"Maine law requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is as likely as not that he deserves a significantly lesser sentence. This is an intolerable result in a society where, to paraphrase Mr. Justice Harlan, it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter. In re Winship, 397 U.S., at 372, 90 S.Ct., at 1076 (concurring opinion). We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case. Accordingly, the judgment below is affirmed." [Emphasis Added.]
In a later case, Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the U.S. Supreme Court faced a similar question as the one brought forth in Mullaney v. Wilbur. The statutory scheme of the State of New York, concerning their homicide laws, was called into question. The New York statutes provided that the crime of murder would be reduced to manslaughter if the defendant proved he acted under "extreme mental or emotional disturbance."[2] The burden placed on the defendant took the form of an affirmative defense. The Court, in reaching its result, stated:
"We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here." At 210, 97 S.Ct. at 2327.
In arriving at its decision in Patterson, the majority distinguished the New York statutory scheme from the scheme employed in Maine which had been held unconstitutional in Mullaney. The Court noted that the Maine statute defined murder as the unlawful killing of a human being "with malice aforethought." "Malice aforethought" was an essential and indispensable element of the crime of murder in Maine and was defined as, "any deliberate, cruel act committed by one person against another suddenly ... or without a considerable provocation." Consequently, the Maine statutes relieved the State from proving an essential element of the crime in that the defendant had the burden of proving provocation even though the murder definition included the element of "malice aforethought" which, as mentioned above, was defined in part as "without considerable provocation."
*1286 In Patterson, the Court found that the scheme employed by New York was distinguishable from the Maine homicide laws because the question of lack of provocation was not an essential element of the crime of murder. Therefore, the New York homicide laws did not violate the due process clause because the burden of proof was on the State to prove all the essential elements of the crime.
Mullaney and Patterson hold that the determination of whether a state's homicide laws violate the due process clause depends a great deal upon the manner in which a state defines the crime charged. See Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982).
The Louisiana Supreme Court in State v. Peterson, 290 So.2d 307 (La.1974), looked at the interplay between the statutory scheme of murder and manslaughter in Louisiana. There the Court stated:
"All of the elements of the two crimes, murder and manslaughter, are identical; there exists only one difference. That is, the statutory definition of manslaughter provides that the killing, which would be murder under 14:30(1), be `committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.' If passion reduces a homicide requiring the same scienter, specific intent, from murder to a less serious crime, manslaughter, then lack of passion may realistically be seen as the additional element which elevates a manslaughter to murder. The presence of passion, however, is in the nature of a defense and, for this reason, the additional `element' of lack of passion need not be proven by the state in a murder prosecution. Therefore, the presence of passion is not an additional element of the crime of manslaughter; rather, it is a factor which exhibits a degree of culpability less than that present when the homicide is committed without passion caused by provocation.
* * * * * *
"Additionally, a review of our manslaughter statutes (that statute in effect at the time of this defendant's trial and the new manslaughter statute) reveals that the `sudden passion' or `heat of blood' provisions operate in a mitigatory fashion in a murder prosecution, not a great deal unlike provisions in the criminal law of other jurisdictions where such factors are considered to be `affirmative defenses' to a charge of murder. Our manslaughter statute, R.S. 14:31, provides: `* * * Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed * * *.' (Emphasis supplied.)" [Footnote omitted.]
See also State v. Thompkins, 403 So.2d 644 (La.1981); State v. Temple, 394 So.2d 259 (La.1981).
In light of the U.S. Supreme Court's rationale in Patterson v. New York, the Louisiana statutory scheme does not violate the Due Process Clause. In Peterson, our Supreme Court noted that "passion" was a mitigating factor which acted as a defense, which is not unlike the statutory scheme employed in New York that was held constitutional in Patterson. Unlike the situation in Mullaney v. Wilbur concerning the Maine homicide laws, the Louisiana statute, as interpreted in Peterson, does not place any burden on the defendant to disprove an essential element of the crime charged. Consequently, this argument propounded by defendant does not have merit.
Defendant further avers that he was denied due process of law because the jury instructions used by the trial judge failed to address the allocation of the burden of proof as regards the issue of provocation.
A review of the jury instructions indicates that the trial judge used the exact language of the appropriate statutes for the crime charged. Inasmuch as we have held here that the statutory scheme of homicide employed by Louisiana is constitutional, consequently the jury instructions *1287 which tracked the statutes do not offend Due Process.
Finally, defendant argues that since there was an overwhelming evidence of provocation which resulted in heat of blood, the State has failed to prove all the essential elements of the offense of second degree murder and alternatively, if the Court finds that the burden is on the defendant to prove provocation, then the Court should vacate the second degree murder conviction and enter a conviction of manslaughter on the basis that provocation was proved.
Defendant's argument that the State has the burden of disproving provocation has no merit. See State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984). Consequently, the State was mandated by statute merely to prove the defendant killed Phyllis Thompson and that he had the specific intent to kill or inflict great bodily harm. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1).
The appellate standard of review of the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and has been adopted by the Louisiana Supreme Court. In State v. Sharp, 414 So.2d 752 (La.1982), our Supreme Court stated:
"In order for a conviction to stand, the evidence, when viewed in a light most favorable to the prosecution, must be sufficient to convince a reasonable trier of fact of the guilt of the defendant, beyond a reasonable doubt, of every element of the crime." [Citation omitted.][3]
Clearly, there is no question that the defendant's weapon was fired and that Ms. Thompson died as a result of the gunshot. The only question that can be raised as to the sufficiency of the evidence, therefore, is the matter of intent. Even the State admits that the defendant was angry when he discharged the weapon; however, the record does not support a contention that there was sufficient provocation to deprive an average person of his self-control and cool reflection. The record reflects that the argument between defendant and Ms. Thompson, which preceded the shooting, appeared to center around loans that the defendant had made to Ms. Thompson and the defendant's drinking problem. This argument is at best weak and the jury did not feel it sufficient to warrant a conviction of manslaughter instead of second degree murder. The testimony of Johnny Shoemaker established that the defendant simply pulled the weapon from his clothing and shot Ms. Thompson in the back of the head. This evidence is sufficient to meet the Jackson v. Virginia standard concerning the element of specific intent.
Consequently, these assignments of error lack merit.
For the above and foregoing reasons the conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] Other assignments of error were filed in the trial court; however, they were not briefed and consequently are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
[2] The Court found the term "extreme emotional disturbance" was the modern equivalent of "heat of passion."
[3] Although reviewing courts are obliged to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See State v. Anderson, 440 So.2d 205 (La.App.3rd Cir.1983), concurring opinion at 223, and cases cited therein.