STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1027

STATE OF LOUISIANA

VERSUS

DAWN R. HARGRAVE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF VERMILION, NO. 39349,
HONORABLE JULES EDWARDS, III, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE
**********

Court composed of John D. Saunders, Michael G. Sullivan, and J. David Painter, Judges.

AFFIRMED.

Edward K. Bauman
P.O. Box 1641
Lake Charles, LA 70602
Attorney for Defendant-Appellant:
     Dawn Hargrave

Richard J. Putnam, III
P.O. Box 175
Abbeville, LA 70511
Attorney for Appellee:
     State of Louisiana

**PAINTER, Judge.**

Defendant, Dawn Hargrave, appeals her conviction for second degree murder and the mandatory sentence of life imprisonment imposed in connection therewith.

FACTS

On July 26, 2002, Defendant was at a bar in Kaplan with a friend, Trenda Nichols Pratt. Defendant left the bar. Defendant admitted in a statement to the investigating officers that she went to J.D. Hebert's residence to borrow money from him. When Defendant returned to the bar, she was bleeding, had cuts on her face, and an injury to one eye. Pratt drove her first to Abrom Kaplan Memorial Hospital and later to Lafayette General.

Meanwhile, at about 9:30 p.m., Hebert, who was seventy-three years old, telephoned one of his daughters, Ellen Bufford, who lived next door. She went to his house and found him bloodied, with swelling on his head, and complaining of pain. He was doubled over, holding his abdomen, and complaining of a strong urge to urinate. Since Hebert seemed to be in severe pain, his daughter called an ambulance and the Sheriff's Department. Hebert arrived at Abrom Kaplan Memorial Hospital at approximately 11:00 p.m. Bufford called her brother, Joseph Hebert, who also drove to his father's residence and saw his injuries. He noticed that the residence was in disarray. The first deputy on the scene was Allen Bernhart. He observed that Hebert was bleeding from his head and had wounds on his arms. Hebert spoke but was incoherent at times. The deputy also noticed the room was in disarray and that there was a significant amount of blood spatter.

Hebert was later air-lifted from Abrom Kaplan Memorial Hospital to Our Lady of Lourdes Hospital. There, the staff performed a hernia operation. Hebert's health

1

appeared to improve at first, but then deteriorated, and he died on August 2, 2002 of what was later determined to be a head injury received on July 26.

On September 19, 2002, the State filed a bill of indictment charging Defendant with first degree murder, a violation of La.R.S. 14:30. In October 2002, she entered a plea of not guilty and not guilty by reason of insanity. On December 11, 2002, the State amended the charge to second degree murder, a violation of La.R.S. 14:30.1. The court appointed a sanity commission on December 19, 2002. Defendant was arraigned on April 23, 2003 on the amended charge and again entered a plea of not guilty and not guilty by reason of insanity. On July 16, 2003, the court determined that Defendant was competent to stand trial. Defendant waived her right to trial by jury.

On January 25-26, 2005, the court conducted a bench trial and found Defendant guilty as charged. The court sentenced Defendant to the mandatory term of life imprisonment on February 24, 2005. Defendant now appeals her conviction and sentence.

## DISCUSSION

*Sufficiency of the Evidence*

It is important to note that there was no eyewitnesses to the crime with which Defendant was charged. As a result, the State relied upon circumstantial evidence to obtain the conviction. The standard for circumstantial evidence in a "*Jackson* review" is well-established:

> In reviewing the sufficiency of the evidence to support a conviction, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676,

2

> 678 (La.1984). Further, when the conviction is based upon circumstantial evidence, LA.REV.STAT. ANN. § 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. *State v. Camp*, 446 So.2d 1207, 1209 (La.1984); *State v. Wright*, 445 So.2d 1198, 1201 (La.1984). However, LA.REV.STAT. ANN. § 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt standard; it is merely an evidentiary guide for the jury when considering circumstantial evidence. *State v. Porretto*, 468 So.2d 1142, 1146 (La.1985).

*State v. Manning*, 03-1982, p. 46 (La. 10/19/04), 885 So.2d 1044, 1088, *cert. denied*, __U.S. __, 125 S.Ct. 1745 (2005).

Defendant asserts that the State failed to prove beyond a reasonable doubt that she was not acting in self-defense when she struck the victim. "In a homicide case such as this, in which the defendant asserts that he acted in self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. *State v. Brown*, 414 So.2d 726, 728 (La.1982)." *State v. Taylor*, 03-1834, p. 7 (La. 5/25/04), 875 So.2d 58, 63.

Defendant concedes that she pushed the victim and kicked him in the testicles. She also states that the victim fell against a "tv stand." However, she argues that she was defending herself from sexual advances by the victim. Defendant did not testify, but her statement to police was introduced at trial. In that statement, she claimed she went to the victim's residence to borrow some money. According to Defendant, she used the restroom, and, when she came out, the victim was nude. He then tried to force himself on her, but she pushed him away. Defendant claimed the victim then poked her eye with "some object," then tried to force her head toward his genitalia. She then kicked him in the groin, he fell, and she left the residence.

The Defendant, not the State, has the burden of proof on a defense of manslaughter. *State v. Wright*, 02-1268 (La.App. 3 Cir. 3/5/03), 839 So.2d 1112.

Louisiana has followed the rule articulated in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319 (1977), requiring a defendant to prove the mitigating factors of sudden passion or heat of blood to reduce homicide to manslaughter. *State v. Smith*, 571 So.2d 133 (La.1990). A defendant who establishes by a preponderance of the evidence that the homicide was committed in sudden passion or heat of blood, the jury errs in finding the defendant guilty of second degree murder. *Smith*, 571 So.2d at 136. This being said, the jury in this case could believe or disbelieve the version related by the Defendant to the police officer, and the failure to find manslaughter is not reversible error.

The court in *State v. Richardson*, 92-836, p. 4 (La.App. 5 Cir. 12/14/94), 648 So.2d 945, 947, *writ denied*, 95-343 (La. 6/23/95) explained the standard to be used in determining whether the use of force is justified in both homicide and non-homicide cases:

> LSA-R.S. 14:19 establishes the standard to be applied in determining whether the use of force or violence on the person of another is justified when such force or violence does not result in death:
>
> . . . .
>
> Thus, the defense of self-defense in a non-homicide situation requires a dual inquiry: an objective inquiry into whether the force used was reasonable under the circumstances, and a subjective inquiry into whether the force was apparently necessary. *State v. Freeman*, 427 So.2d 1161 (La.1983).
>
> In contrast, when such force or violence results in a homicide, the standard as set forth in LSA-R.S. 14:20 is applicable:
>
> . . . .
>
> Under this standard the use of force is justified in self-defense only if the person reasonably believed (objective) that he was in imminent danger of losing his life or receiving great bodily harm and that deadly force was necessary to save himself. *State v. Guinn*, 319 So.2d 407 (La.1975).

4

Because the victim ultimately died from injuries received in this incident, the homicide standard applies here. However, the force used by Defendant was not reasonable under either standard. The events described by Defendant in her statement do not indicate a need for deadly force or the infliction of great bodily harm. Even had the victim survived, the force used on him could not be described as reasonable or necessary.

The victim's daughter and son and the deputy called to the scene, all described the victim as bloody. The victim had an obvious injury to the head and defensive wounds on his arms. The medical evidence demonstrated that he had been "beaten head to toe." The victim was a small man, five feet, six inches tall and one hundred forty five pounds.[1] As Defendant's trial counsel acknowledged, the victim was "a frail old man." Pratt stated that the victim frequently "made passes" at her but acknowledged that he was easily repelled because "[t]here was nothing to him." Defendant's height and weight are not in the record, but she was apparently in her mid-thirties, much younger than the victim. The testimony also indicated that she was a capable fighter and had battered the victim in a barroom prior to the offense at issue.

Baines Richard, an acquaintance of both the victim and Defendant, testified that he saw her "cold-cock" the elderly man at a Kaplan bar called "Rumors," knocking him from a stool. According to Richard, the incident occurred approximately six months before the offense at issue. Pratt testified that a few months before the offense at issue, while at "Rumors," she saw Defendant grab the

---

[1]The measurements listed are from the pathologist's testimony. The victim's daughter described him as being five feet nine inches tall and weighing one hundred twenty pounds.

elderly victim by the neck and throw him under a pool table. It is not clear whether the two witnesses were describing two separate incidents or two versions of the same incident. In either case, this evidence shows that Defendant had the ability to physically dominate the victim, and was aware that she could do so prior to the offense at issue. Richard and Pratt both testified the dispute, or disputes, centered around money the victim had lent Defendant or Pratt.

The record demonstrates Defendant had little to fear from the frail, elderly victim. Even if it became necessary for her to physically repel him, the force she used was clearly excessive. Dr. Emil Laga, the forensic pathologist who examined the victim's body, noted multiple external injuries including a three- to four-inch bruise on the left temple area of the head extending behind the ear towards the back of the head, three lacerations on the left upper eyelid, below the left eye, and on the left ear. Injuries to his legs included two bruises on the lower left leg and two on the right leg, a deep cut over his right knee, injuries to the groin, and a four-inch bruise on the left buttock. Dr. Laga agreed that the victim was beaten from head to toe, with the major injuries on the left side of his body. He opined that the injuries may have been inflicted by hitting him with the wooden TV tray, which was found at his residence.

Given her history of physically dominating the victim, even Defendant's version of events does not depict a scenario in which she could reasonably have believed that she was in danger of death or great bodily harm or one that called for her to inflict great bodily harm or death in order to defend herself.

Defendant further suggests the evidence does not "satisfy the requirements of due process" because fingerprints were not lifted from a wooden TV tray that may have been used in the offense, blood spatter was not analyzed for DNA, and the scene

6

was left unsecured and unprocessed until August 2, 2002. As this court has previously stated:

> It is well-established that the State has discretion regarding how to make out its case. Presence or absence of evidence, and weight of the evidence produced, are matters to be assessed by the factfinder. For example, there is no legal requirement for the State to test for fingerprints, produce fingerprint evidence, test certain evidence, or call certain witnesses to satisfy the elements of the offense at issue. *See State v. Green*, 94-986 (La.App. 3 Cir. 3/1/95), 651 So.2d 435.

*State v. Cash*, 03-853, p. 6 (La.App. 3 Cir. 12/10/03), 861 So.2d 851, 855-56, *writ denied*, 04-27 (La. 4/30/04), 872 So.2d 472, *writ denied*, 04-232 (La. 5/7/04), 872 So.2d 1080. We find no merit in this aspect of Defendant's argument.

Defendant also notes that a defense expert, neurologist Dr. Donald Harper, testified that he did not believe that Defendant died of a closed-head injury. However, Defendant does not argue the significance of Dr. Harper's opinion to her conviction, thereby presenting this court with nothing to review. Dr. Laga testified that the victim died from a closed-head injury near the base of his skull and that the injury was consistent with a blow from the tv stand that was found in the victim's residence. The weighing of evidence, including credibility of expert witnesses, is a matter for the trier of fact. *State v. Silman*, 95-154 (La. 11/27/95).

Also, Defendant urges as significant the fact that the victim had been in a one-vehicle accident shortly before the offense at issue. However, witness Josh Touchet testified that on July 26, 2002, while driving home, he saw a car in a ditch by the road. Touchet stopped and helped Hebert out of the car. The witness saw no damage to the car and no injuries to the elderly man. Further, he testified Hebert did not complain of any injuries. Hebert's daughter, Ellen Bufford, testified that she picked him up at the accident scene. She did not call an ambulance or take him to a doctor

7

because he showed no signs of injury and did not complain of any. The accident apparently did not damage the car. In its ruling, the trial court found that there was no evidence that the accident caused the victim's injuries. In view of the testimony just cited, the trial court did not err in making such an assessment. Therefore, this portion of Defendant's argument lacks merit.

Defendant makes the alternative argument that the verdict against her should have been manslaughter, pursuant to La.R.S. 14:31, rather than second degree murder. She argues that she acted in the "heat of blood" as termed in the statute, stating she was angry because the victim refused to lend her any money. However, for factual support, she cites a statement that was not introduced at trial. Thus, it is not appropriate for appellate review. Further, the victim's apparent refusal to lend money to Defendant was not "provocation sufficient to deprive an average person of his self-control" as required by La.R.S. 14:31. *See, e.g., State v. Chelette*, 453 So.2d 1282, 1287 (La.App. 3 Cir.), *writ denied*, 458 So.2d 127 (La. 1984).

Therefore, we find that the evidence, "viewed in the light most favorable to the prosecution was sufficient to convince a rational trier of fact that all the elements of the crime was proved [sic] beyond a reasonable doubt," and excludes "every reasonable hypothesis of innocense." *Manning*, 885 So.2d at 1088.

*Waiver of Right to Trial by Jury.*

Appeal counsel for Defendant argues that she was not informed of, nor did she knowingly and intelligently waive, her right to trial by jury, as required by La.Code Crim.P. art. 708. In brief, he observes that the minutes of the original record do not show that Defendant waived the right at all.

8

However, as the State points out in its brief, the original record was incomplete, as it contained neither the minutes nor the transcript of a hearing conducted on January 18, 2005. This court has obtained the omitted minutes and transcript, which both demonstrate that Defendant waived her right to a jury trial

The minutes refer to the proceeding as an "informal" decision to waive a jury trial, but the transcript shows that the reference is to an "informed" decision to make a waiver. The transcript demonstrates that the Defendant was represented by counsel at the waiver hearing. The trial court called her to the stand and examined her before accepting her waiver of the right to a jury trial. The court established that the waiver was her idea and decision, not simply acquiescence with her counsel's advice.

This court has stated that:

> While one who is entitled to a jury trial may waive that right, such waiver shall not be presumed but must be established by a contemporaneous record setting forth the articulated apprisal of that right followed by a knowing and intelligent waiver by the accused. *State v. Smith*, 447 So.2d 4 (La.App. 3 Cir.1984). The denial of this fundamental right constitutes an error patent. *State v. Salata*, 479 So.2d 660 (La.App. 3 Cir. 1985).

*State v. Morris*, 607 So.2d 1000, 1001 (La.App. 3 Cir. 1992), *writ granted and judgment set aside, in part, on other grounds and remanded*, 615 So.2d 327 (La.1993), *on remand*, 619 So.2d 184 (La.App. 3 Cir. 1993.

The record in this case establishes such a knowing and intelligent waiver.

*Excessive sentence.*

Defendant argues that her life sentence was excessive, despite the fact that it is statutorily mandated for second degree murder, pursuant to La.R.S. 14:30.1. Defendant did not file any motions to reconsider the sentence. Therefore, her excessiveness claim is barred by La.Code Crim.P. art. 881.1. However, in the

9

interest of justice, this court will review the assignment as a bare claim of excessiveness. *State v. Graves*, 01-156 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, *writ denied*, 02-29 (La. 10/14/02), 827 So.2d 420.

As this court has explained:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

Viewed as a whole, Defendant's argument seems to imply that the sentence did not "fit both the offender and the offense." However, Defendant beat an elderly man so badly that he died a few days later. Therefore, the sentence does not "shock the conscience," and fits both the offender and the offense.

CONCLUSION

Defendant's conviction and sentence are affirmed.

AFFIRMED.

10