# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-234

**STATE OF LOUISIANA**

**VERSUS**

**DAVID K. HAWKES**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 20-759
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHARON DARVILLE WILSON**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Sharon Darville Wilson,
Judges.

**AFFIRMED AS AMENDED.**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **David K. Hawkes**

**Hon. J. Reed Walters**
**District Attorney - 28th JDC**
**P. O. Box 1940**
**Jena, LA 71342**
**(318) 992-8282**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**WILSON, Judge.**

A unanimous jury found Defendant, David K. Hawkes, guilty of the responsive verdicts of manslaughter, in violation of La.R.S. 14:31; and aggravated assault with a firearm, in violation of La.R.S. 14:37.4. The trial court sentenced Mr. Hawkes to the maximum forty years at hard labor, without benefit of probation, parole, or suspension of sentence for manslaughter and seven years at hard labor for aggravated assault with a firearm. In addition to casting Mr. Hawkes with all costs of trial, the trial court also ordered that Mr. Hawkes' sentences be run consecutively. Mr. Hawkes now seeks review of his convictions and sentences. For the following reasons, we affirm the convictions and sentences as amended.

## I.

## ISSUES

We must decide:

(1) whether the composition of David Hawkes' petit jury violated the Constitution of the United States, Article I, § 16 of the Louisiana Constitution and La.Code Crim.P.art. 401, as amended by Act 121 of 2021;

(2) whether the trial court erred in imposing an unconstitutionally excessive maximum sentence of forty (40) years at hard labor for manslaughter in this case as David Hawkes is a first-felony offender whose concern for his children played a large role in his actions; and

(3) whether the trial court erred in imposing consecutive sentences in this case as the crimes were part of the same act or transaction.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. Hawkes shares two children with Ms. Lashonda Reed, Kristini and Jaiden, who were nine and eight when the following events took place. According to Mr. Hawkes, on September 3, 2020, Jaiden told him that Mr. Thomas Price, Ms. Reed's fiancé, was bullying him and touched him inappropriately. On September 5, 2020, Mr. Hawkes told Ms. Reed about his conversations with Jaiden and that he did not feel comfortable with the children going back with Ms. Reed and Mr. Price. Ms. Reed dismissed the allegations against her fiancé and stated she was coming to pick up the children.

Later that day, Ms. Reed, Mr. Price, and some of Ms. Reed's relatives arrived at Mr. Hawkes' mother's home to pick up the children. Mr. Hawkes claimed that that he tried to call 911 multiple times, but it was busy. Ms. Reed came to the door and begged Mr. Hawkes for the children, but he refused. His mother was also at the door. Mr. Hawkes claimed that Mr. Price came into the home, threatened Mr. Hawkes, and was "reaching towards his waistline," when Mr. Hawkes drew a .38 revolver and fired multiple shots, shooting both Ms. Reed and Mr. Price. Other witnesses reported that Mr. Price never entered the home but told Mr. Hawkes, in an aggressive manner, to bring his "bitch ass" outside before Mr. Hawkes began firing the .38 caliber revolver. Mr. Hawkes then retrieved a 9mm pistol and shot Mr. Price again.

Mr. Hawkes testified that Mr. Price begged for his life and said he would "never violate" Jaiden again. Mr. Hawkes then shot Mr. Price three more times in the chest. Afterwards, Mr. Hawkes brought Ms. Reed to the hospital. Mr. Price was unarmed and died at the scene.

On October 30, 2020, Mr. Hawkes was charged by bill of indictment with second degree murder of Mr. Price, in violation of La.R.S. 14:30.1; as well as the attempted second degree murder of Ms. Reed, in violation of La.R.S. 14:27 and

2

14: 30.1. Mr. Hawkes proceeded to trial on October 24, 2022. On October 27, 2022, a jury unanimously found him guilty of the responsive verdicts of manslaughter regarding Mr. Price, in violation of La.R.S. 14:31; and aggravated assault with a firearm regarding Ms. Reed, in violation of La. R.S. 14:37.4. After the preparation of a presentence investigation report (PSI), Mr. Hawkes was sentenced to forty years at hard labor, without benefit of probation, parole, or suspension of sentence for manslaughter and seven years at hard labor for aggravated assault with a firearm. His sentences were to be run consecutively, and he was cast with all costs of trial. Mr. Hawkes now seeks review of his convictions and sentences.

III.

## LAW AND DISCUSSION

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The trial court erroneously imposed Mr. Hawkes' manslaughter sentence without benefit of parole. Louisiana Revised Statutes 14:31 provides, in pertinent part:

> B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

According to the affidavit in support of the warrant for Mr. Hawkes' arrest, Mr. Price's date of birth was May 22, 1994. Thus, the victim was not under the age of ten at the time he was killed. Consequently, the above penalty provision did not prohibit probation or suspension of sentence in this case. Furthermore, the

3

above penalty provision states nothing regarding parole eligibility; thus, the penalty provision likewise did not prohibit parole eligibility.

Addressing this issue in a similar case, this court stated:

> First, the trial court erred in ordering that Defendant's manslaughter sentence be served without the benefit of parole. For manslaughter, Defendant was sentenced to forty years without the benefit of parole, probation, or suspension of sentence. Louisiana Revised Statutes 14:31 provides:
>
> > B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.
>
> Thus, the above penalty provision does not prohibit parole, probation, or suspension of sentence in this case. However, at the time the offense was committed, La.Code Crim.P. art. 893(A) prohibited a suspended sentence for an offense designated as a crime of violence in La.R.S. 14:2(B), which included the crime of manslaughter. Therefore, the trial court properly imposed Defendant's manslaughter sentence without the benefit of probation or suspension of sentence. But, because La.Code Crim.P. art. 893 did not authorize the restriction of parole, the trial court erred in ordering Defendant's manslaughter sentence to be served without the benefit of parole. Accordingly, this court amends Defendant's manslaughter sentence to delete the denial of parole eligibility and instructs the district court to make an entry in the minutes reflecting this change. *State v. Batiste*, 09-521 (La.App. 3 Cir. 12/9/09), 25 So.3d 981.

*State v. Mayfield*, 18-420 pp. 2-3 (La.App. 3 Cir. 12/6/18), 261 So.3d 101, 103-04, *writ denied*, 19-46 (La. 5/28/19), 273 So.3d 316 (footnote omitted).

Just as in *Mayfield*, at the time of the offense in the present case, La.Code Crim. P. art. 893(A)(2) prohibited a suspended sentence for an offense designated as a crime of violence pursuant to La.Code Crim.P.art. 890.3. Louisiana

4

Code of Criminal Procedure Article 890.3(B) provides that certain crimes, including manslaughter, must be designated as a crime of violence as a matter of law. Furthermore, a trial court always has discretion to refuse to suspend a sentence. Therefore, the trial court properly imposed Mr. Hawkes's sentence without benefit of probation or suspension of sentence.

However, as noted in *Mayfield*, Article 893 does not mention a restriction on parole eligibility. Thus, the trial court erred in ordering Mr. Hawkes to serve his sentence without the benefit of parole. Mr. Hawkes' manslaughter sentence is amended to delete the denial of parole eligibility and instruct the trial court to make an entry in the minutes reflecting this change.

## JURY COMPOSITION

In his first assignment of error, Mr. Hawkes contends the composition of his petit jury violated the Constitution of the United States, Article I, § 16 of the Louisiana Constitution, and La.Code Crim.P.art. 401, as amended by Act 121 of 2021. Effective August 1, 2021, La.Code Crim.P.art. 401(A)(5) stated someone was not qualified to serve as a juror if they were "under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service." The trial court, however, instructed the jurors that they "must not be under indictment for a felony or convicted of a felony for which you have not yet been pardoned." This was the law prior to the enactment of Act 121.

Potential juror number 135, Ms. Torres, informed the trial court that she had a single felony conviction for simple burglary and that she finished her parole in 1997. The trial court then excused Ms. Torres "for lack of qualifications." While both the State and defense counsel asked questions about the specifics of Ms. Torres's conviction, neither party objected to her removal.

5

Mr. Hawkes asserts that the exclusion of Ms. Torres based on her felony conviction more than twenty years before his trial is not susceptible to a harmless error analysis. Rather, Mr. Hawkes contends that the exclusion constitutes a structural error which necessitates a new trial. In support of his contention, Mr. Hawkes relies upon *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617 (1986). Specifically, he invokes the court's language that:

> When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm. Accordingly, when the trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from review, and we must presume that the process was impaired. See *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927) (reversal required when judge has financial interest in conviction, despite lack of indication that bias influenced decisions). Similarly, when a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained. See *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976) (per curiam); *Sheppard v. Maxwell*, 384 U.S. 333, 351–352, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966). Like these fundamental flaws, which never have been thought harmless, discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.

*Id.* at 263-64.

In *Vasquez,* the defendant's murder conviction was overturned because his indictment was issued by a grand jury from which African Americans had been systematically excluded. The opinion goes so far as to note "The California Supreme Court found that the total absence of blacks from the grand jury in the history of Kings County was an undisputed fact." *Id.* at 258. Mr. Hawkes argues that because the *Vasquez* court noted a similarity to a petit jury "selected upon improper criteria,"

6

the fact that Ms. Torres was excluded automatically renders this trial structural unsound. *Id*. at 263. We disagree.

The case cited for the court's "improper criteria" remark is a per curiam opinion issued in *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399 (1976). In *Davis*, the improper criterion involved a juror who was removed for cause because they expressed a reluctance to impose a death sentence. The *Davis* court reversed the conviction, finding the failure of the court to determine whether the juror should be removed for cause under *Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777 (1968), which held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction," rendered the subsequently imposed death sentence invalid.

In the instant case, the death penalty was not an issue, as Mr. Hawkes was charged with second degree murder, not first degree murder. Additionally, the juror in *Davis* was removed for cause, leading the court to wonder if the action served to improperly give the state an additional peremptory challenge it would not have otherwise been entitled to use. That is also not an issue in the present case as neither party used its full allotment of peremptory challenges. Finally, while the *Vasquez* court noted a similarity between a grand jury and a petit jury, it also specifically noted the importance of the grand jury:

> Nor are we persuaded that discrimination in the grand jury has no effect on the fairness of the criminal trials that result from that grand jury's actions. The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the

7

same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *United States v. Ciambrone*, 601 F.2d 616, 629 (CA2 1979) (Friendly, J., dissenting). Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come.

*Vasquez*, 474 U.S. at 263 (alteration in original).

The petit jury whose composition Mr. Hawkes attacks lacks such power. Perhaps most importantly, the group whose rights Mr. Hawkes claims are being violated is not a protected class, unlike the group which was excluded in *Vasquez*. Mr. Hawkes contends that a distinctive group, namely those individuals with a felony conviction that is more than five years old, is being discriminated against, and, therefore, he is entitled to a new trial. In *Vasquez*, however, jurors were excluded based on race. The *Vasquez* court noted that it had repeatedly refused to find a conviction can cleanse the taint of a crime resulting from an exclusion of members of a specific race, a practice that violates the United States Constitution. "When *constitutional error* calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm." *Id.* (emphasis added).

While the issue in *Vasquez* involved a violation of a constitutional right, the issue in this matter involves only a violation of a statute of criminal procedure. Accordingly, we find that a violation of La.Code Crim.P. art. 401 (A)(5) is not a structural error and is amendable to harmless error review. As the removal of Ms. Torres did not amount to a structural error, a contemporaneous objection was required to preserve the issue for review on appeal. La.Code Crim.P.art. 841. Neither party objected to Ms. Torres's removal. Furthermore, the assignment of

8

error lacks merit due to the lack of demonstrated prejudice. It is clear from the record that Ms. Torres's name was never drawn for examination. As such, she would have never been on the jury and her exclusion could not have impacted the trial in any way.

## EXCESSIVE SENTENCE

In his second assignment of error, Mr. Hawkes asserts the trial court imposed an excessive sentence when it handed down a maximum sentence for manslaughter, even though he was a thirty-three-year-old first felony offender at the time of his sentencing, had two minor children, and his actions were the result of his concern for the wellbeing of said children.

Although defense counsel objected to Mr. Hawkes' sentences at sentencing, he stated no grounds for his objection and subsequently failed to file a motion to reconsider providing any grounds for a claim of excessiveness. Louisiana Code of Criminal Procedure Article 881.1 provides:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Given that Mr. Hawkes failed to comply with La.Code Crim.P.art. 881.1, our review is restricted to a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552.

9

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, writ denied, 00-0165 (La.6/30/00)00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:
>
> > While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be

> individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-0452 (La. 9/26/14), 149 So.3d 261.

Furthermore, this court adopted the fifth circuit's three-factor test from *Lisotta* in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, and *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626.

Under *Baker*, the first consideration is the nature of the crime. This case clearly involves a crime of violence. Mr. Hawkes was convicted of manslaughter after shooting Mr. Price seven or eight times. Three of these shots were at close range while Mr. Price was, according to Mr. Hawkes, begging for his life. By its very nature, manslaughter is one of the worst offenses in our criminal code, just a step below murder. Moreover, although Mr. Hawkes was found guilty of manslaughter as a responsive verdict, the trial court believed his actions supported a conviction for the charged offense.

The second *Baker* factor is the nature and background of the defendant. The trial court noted at sentencing that Mr. Hawkes dropped out of school in the ninth grade, but subsequently completed his GED and has worked at various jobs in the Jena, Louisiana community. The court also noted a long-time use of marijuana beginning at the age fifteen, no indication of any treatment for drug use, and that

11

although Mr. Hawkes was ordered to pay child support, he only did so when he was seeing the children.

The final *Baker* factor is a comparison of sentences imposed for similar offenses. Louisiana courts have upheld maximum or near-maximum sentences for first offenders convicted of manslaughter on numerous occasions. Our courts have noted, "[g]enerally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78. "[I]n the context of a maximum-sentence analysis for manslaughter, where the evidence would otherwise support a murder conviction, Defendant can be considered 'the worst type of offender.'" *State v. Ayala*, 17-1041, p. 7 (La.App. 3 Cir. 4/18/18), 243 So.3d 681, 687-88.

In *State v. Hebert*, the defendant was charged with second degree murder but pled guilty to manslaughter for beating a man who later died from a brain hemorrhage because of the attack. The defendant was a first offender who had never been involved in this type of activity before. The trial court found that the defendant committed an act of actual violence and that the beating received was severe and deliberate. The defendant also received a significant benefit by pleading guilty to manslaughter instead of second degree murder. This court upheld the defendant's maximum sentence.

In *State v. Angelle*, 13-508 (La.App. 3 Cir. 11/6/13), 124 So.3d 1247, *writ denied*, 13-2845 (La. 5/23/14), 140 So.3d 724, and *writ denied*, 13-2892 (La. 8/25/14), 147 So.3d 693, this court upheld a maximum sentence for a first time offender who fatally shot a man at a bar, was charged with second degree murder, and pled guilty to manslaughter. The court held that the facts were sufficient to support a murder conviction, and the defendant received the benefit of pleading to

the reduced crime of manslaughter and avoiding the more severe penalty of life imprisonment.

In this case, Mr. Hawkes was initially charged with second degree murder, a crime that carries a mandatory life sentence. The trial court made it clear that it believed Mr. Hawkes' actions towards Mr. Price were murder, not manslaughter:

> The fact is that [Mr. Price] had a chance of survival. The fact is that if I believe you, which I don't believe you because I don't think that there is anyway it could happen. He was enough of a health [sic] enough of a understanding [sic] that he begged for his life, said I would never violate your son again so you proceeded to put three (3) more [shots] in him. That is murder, you were convicted of manslaughter[, but] that is murder. The fact according to the autopsy and according to the testimony of Doctor Tape said that he had bullets lodged in his knee and in his buttock. If he was down on his knees begging for his life there is no way on God's green earth he could lunge with a bullet sitting in his butt and in his leg. That doesn't happen and when you put three (3) more in his chest, that doesn't happen. . . . It is clear that you have an anger issue. Your reaction was not rational.

Therefore, we cannot say that the trial court abused its discretion in imposing a maximum sentence for Mr. Hawkes' manslaughter conviction. This assignment lacks merit.

## CONSECUTIVE SENTENCES

In his final assignment of error, Mr. Hawkes contends the trial court erred in running his sentences consecutively because his shootings of Mr. Price and Ms. Reed were part of the same act or transaction. Louisiana Code of Criminal Procedure Article 883 states,

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be

served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Mr. Hawkes contends that because the trial court failed to provide "particular justification for the consecutive nature of the sentences," the presumption that he should receive concurrent sentences should apply. We disagree and find that Mr. Hawkes' argument regarding his consecutive sentences was waived and is therefore precluded from review. While it is true that Louisiana courts have held that a judge must give reasons for running sentences arising out of a common scheme or plan consecutively, this court held in *State v. Pardue*, 22-565 (La.App. 3 Cir. 3/15/23), 359 So.3d 158, that failure to raise an argument regarding consecutive sentences in a motion to reconsider sentence precludes review. This court specifically noted:

> At no time did Defendant specifically allege in his motion that the trial court erred in imposing consecutive sentences and he did not allege the trial court improperly considered the original charges of vehicular homicide before sentencing Defendant on the amended charges of negligent homicide. Furthermore, Defendant did not present any argument on these issues at the hearing on the motion to reconsider sentence. Therefore, pursuant to La.Code Crim.P. art. 881. 1(E), we find this court is precluded from addressing Defendant's arguments.

*Id.* at 170.

As previously noted, Mr. Hawkes failed to provide grounds for his general objection at sentencing and then failed to file a motion to reconsider sentence. Accordingly, considering *Pardue*, this court is precluded from addressing Mr. Hawkes' claim that his sentences should be run concurrently.

14

IV.

**<u>CONCLUSION</u>**

For the foregoing reasons, Mr. Hawkes' convictions are affirmed. We find that the trial court committed legal error in imposing Mr. Hawkes' sentence without the benefit of parole. The sentence is amended to delete the denial of parole eligibility, and the trial court is instructed to make an entry in the minutes reflecting the change. Mr. Hawkes' sentences are affirmed as amended.

**AFFIRMED AS AMENDED.**